UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CARISSA L. CONTE

       Plaintiff,

    v.                      **REPORT AND RECOMMENDATION**
                                **08-CV-01185 (DNH)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

       Defendant,

## I.    Introduction

Plaintiff Carissa Conte brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), discontinuing her Supplemental Security Income ("SSI").[1]

## II.    Background

Plaintiff, born September 13, 1987, applied for SSI, through her mother, on June 29, 2000 (R. at 36).[2] Plaintiff was ultimately granted benefits (R. at 12, 36). After Plaintiff's eighteenth birthday, her eligibility for disability benefits was redetermined based on the rules governing adults (R. at 12); 20 C.F.R. § 416.978. On February 16, 2006, Plaintiff was found no longer disabled as of February 1, 2006. Id. Plaintiff alleges disability due to various mental impairments, including depression and anxiety impairments, posttraumatic stress disorder ("PTSD"), obsessive compulsive personality

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated February 5, 2010.
[2] Citations to the underlying administrative record are designated as "R."

disorder ("OCPD"), and attention deficit hyperactivity disorder ("ADHD").

Plaintiff appeared before the ALJ on November 2, 2006, but the hearing was adjourned to allow Plaintiff an opportunity to obtain representation (R. at 272-76). Plaintiff again appeared before the ALJ, with representation, on June 28, 2007 (R. at 277-303). The ALJ considered the case *de novo* and, on August 23, 2007, issued a decision finding her not disabled as of February 1, 2006 (R. at 12-19). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on September 15, 2007 (R. at 2-8). On November 6, 2008, Plaintiff filed this action.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings. [3]

### III.   Discussion

### A.   Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to

---

[4] The five-step process is detailed as follows:

determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

---

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

Based on the entire record, the Court recommends that the Commissioner's decision be affirmed.

### B.     Analysis

### 1.  The Commissioner's Decision

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above:[5] At step two, Plaintiff's "depression; PTSD (post-traumatic stress disorder); and generalized anxiety disorder" were found to be severe impairments (R. at 14). At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 15). The ALJ next determined that, as of

> February 1, 2006, [Plaintiff] had the residual functional capacity to perform any pertinent exertional level of work, with only 'mild' mental limitations which would not preclude meeting the basic mental demands of competitive employment, which under the Act involve[d] [the] ability to understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting

(R. at 16). Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re [found to be] not entirely credible" (R. at 18). Plaintiff was a younger individual with at least a high school education. Id. Finally, based on Medical-Vocational Rule 204.00,[6] the ALJ found that as of February 1, 2006, there were jobs in the national economy that Plaintiff could perform in significant numbers (R. at 18-

---

[5] Because Plaintiff's disability was being redetermined under the rules for adults, the ALJ was not required to determine whether Plaintiff had engaged in substantial gainful activity. 20 C.F.R. § 416.987(b).
[6] According to Rule 204.00, "an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse." 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 204.00.

19). Ultimately, the ALJ found that Plaintiff was not under a disability at any time from February 1, 2006, through the date of his decision (R. at 19).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that the ALJ erred in a) evaluating the various medical opinions of record; b) failing to include all Plaintiff's non-exertional mental limitations in the residual functional capacity ("RFC"); and c) failing to properly evaluate her credibility.

### a) The ALJ's Evaluation of the Medical Opinions is Supported by Substantial Evidence

Plaintiff argues generally that the ALJ erred in evaluating the various medical opinions of record. Plaintiff's Brief, pp. 13-19. Specifically, Plaintiff argues that the ALJ erred in i) applying the treating physician rule to the opinions of Dr. Daniel Uwah, Plaintiff's psychiatrist; ii) failing to grant greater weight to the opinions from the Social Security Administration ("SSA") consultative examining psychologist; and iii) improperly relying on the opinions from the SSA non-examining review psychologists.

### i) The ALJ Did Not Err in Applying the Treating Physician Rule

Plaintiff argues that the ALJ erred in applying the treating physician rule by failing to grant the opinions from Dr. Uwah, Plaintiff's treating psychiatrist, controlling weight. Plaintiff's Brief, pp. 14-17. Plaintiff further contends that the ALJ erred in failing to re-contact Dr. Uwah for clarification of his opinions. Plaintiff's Brief, p. 17.

Dr. Uwah submitted three assessments of Plaintiff's ability to function despite her impairments. The first assessment was completed on April 19, 2006 (R. at 185-97)

6

(hereinafter April 19, 2006 report). Dr. Uwah found that Plaintiff's sensorium and intellectual functions were generally "good," and her insight and judgment were "fair" (R. at 188). Dr. Uwah also found that Plaintiff had no limitations in the categories of understanding and memory, sustained concentration and persistence, as well as adaption (R. at 190). However, Dr. Uwah noted that Plaintiff was "shy, ha[d] low self esteem, [and] remain[ed] very introverted." Id. Thus, Dr. Uwah opined that Plaintiff was limited in her social interaction. Id. Finally, Dr. Uwah opined that Plaintiff "c[ould] do work related mental activities if she [wa]s not under too much close scrutiny and much stressed by excess work" (R. at 189).

Dr. Uwah's two later assessments were significantly more restricting. On August 7, 2006, Dr. Uwah opined that Plaintiff was generally markedly limited in the categories of social interaction and adaption[7] (R. at 201). A finding of markedly limited indicated that her impairments effectively precluded her from performing the activity in a meaningful manner (R. at 200). On April 7, 2007, Dr. Uwah opined that Plaintiff's functioning was generally seriously limited, but not precluded, in all the categories the report assessed: making occupational adjustments; making performance adjustments; and making personal/social adjustments (R. at 229-30).

According to the "treating physician's rule,"[8] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

---

[7] Dr. Uwah found that Plaintiff's functioning in the two other categories, understanding and memory as well as sustained concentration and persistence, were not ratable on available evidence (R. at 200-01).
[8] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

The ALJ found Dr. Uwah's April 19, 2006 report to be inconsistent with his later opinions (R. at 15). The ALJ then determined that the RFC would be based largely on Dr. Uwah's April 19, 2006 report, because it was supported by the opinions from the SSA consultative sources (R. at 17-18). The Court finds that the ALJ's analysis is supported by substantial evidence.

Given the inconsistencies between Dr. Uwah's April 19, 2006 report and his later assessments, the ALJ did not err in failing to grant controlling weight to any of Dr. Uwah's opinions. See 20 C.F.R. § 404.1527(d)(2) (indicating that an opinion may

8

properly denied controlling weight if it "is . . . inconsistent with the other substantial evidence in [the] record").

The ALJ's determination to rely most heavily on the April 19, 2006 report, is also supported by substantial evidence. The ALJ found that this report was "supported by both the consultative exam results appearing in this record and by the State Agency assessment of record" (R. at 18). The Court concurs with the ALJ's findings that Dr. Uwah's April 19, 2006 report is supported by the opinions from Dr. David Stang, the SSA consultative examining psychologist, as well as both Dr. Ed Kamin and Dr. M. Graff, the non-examining review psychologists.[9]

First, the ALJ was correct in finding that Dr. Uwah's April 19, 2006 report was supported by the SSA examining consultative psychologist, Dr. Stang (R. at 141-48). Dr. Stang opined that Plaintiff had the ability to "follow and understand simple work-related directions and instructions. She and her mother acknowledge[d] that she [wa]s a responsible worker. She c[ould] do simple work-related tasks such as baby-sitting and photocopying. She had volunteered to work at the Humane Society" (R. at 147). Although Dr. Stang noted that Plaintiff experienced episodes of anxiety, depression, and stress, which might negatively impact her ability to work, he opined that "[s]he could, probably, handle a simple job if there [wa]s limited public interaction and if the job tasks [we]re minimally stressful." Id. These opinions support the findings in Dr. Uwah's April 19, 2006 report, that Plaintiff was not limited in the categories of understanding and

---

[9] The ALJ specifically found that the RFC was supported by Exhibit B-3F, Dr. Stang's opinions, and Exhibit B-7F, Dr. Graff's mental RFC assessment (R. at 18, 141-48, 181-84). Thus, the ALJ failed to state that the RFC was also supported by Dr. Kamin's mental RFC assessment. However, both Dr. Kamin's opinions and Dr. Graff's opinions were afforded substantial weight by the ALJ (R. at 14, 18). Dr. Kamin and Dr. Graff also expressed identical opinions in their mental RFC assessments (R. at 163-66, 181-84). Thus, the Court concludes that the ALJ's failure to state that the RFC was also supported by the mental RFC assessment from Dr. Kamin, was simply an unintentional oversight.

memory, sustained concentration and persistence, as well as adaption, but was somewhat limited in social interaction (R. at 190).

Plaintiff's record was reviewed by SSA consultative psychologist, Dr. Kamin on February 16, 2006[10] (R. at 149-66); and again by Dr. Graff, on March 13, 2006,[11] (R. at 167-84). As noted by the ALJ, Drs. Kamin and Graff "assessed no more than mild-to-moderate mental limitations in all the numerous specifically evaluated work-related function domains" (R. at 14, 163-66, 181-84). These functional domains included understanding and memory, sustained concentration and persistence, social interaction, as well as adaption (R. at 163-64, 182-86). Thus, Dr. Uwah's April 19, 2006 report was consistent with the findings from both Dr. Kamin and Dr. Graff.

Plaintiff also argues that the ALJ erred in failing to re-contact Dr. Uwah for an explanation of the inconsistencies in his various opinions. Plaintiff's Brief, 17. The Court acknowledges that, in certain circumstances, inconsistencies in a treating physician's report would obligate the ALJ to re-contact that source for an explanation. See 20 C.F.R. § 404.1512(e)(1) (requiring an ALJ to re-contact a treating physician when "the report from [that] source contains a conflict or ambiguity that must be resolved"). However, in this case, the record was fully developed.

Here, Dr. Uwah had been re-contacted by Plaintiff's attorney for such an explanation. Dr. Uwah then submitted a letter in an attempt to clarify any perceived

---

[10] Dr. Kamin's opinions are found in two reports: a psychiatric review technique (R. at 149-62); and a mental RFC assessment (R. at 163-66). A disability analyst originally completed the mental RFC on assessment on February 13, 2006 (R. at 165). This form was signed by Dr. Kamin on February 16, 2006. Id.

[11] Dr. Graff's opinions are found in two reports: a psychiatric review technique (R. at 167-80); and a mental RFC assessment (R. at 181-84). Both forms are dated, but only the psychiatric review technique is signed by Dr. Graff. The mental RFC contains no signature. Because both reports were dated March 13, 2006, the Court assumes Dr. Graff completed both assessments (R. at 167, 181).

inconsistencies between his assessments (R. at 257-59). The ALJ considered the letter
and found that "[t]he few rather minor points raised there d[id] not justify granting the
later reports any further evidentiary weight" (R. at 15). Plaintiff failed to articulate why a
second explanation was necessary. Thus, because Plaintiff's treating psychiatrist, Dr.
Uwah, had submitted an explanation, the record from him was fully developed and the
ALJ was not required to re-contact him for a second explanation of the conflicts. See
Rebull v. Massanari, 240 F.Supp.2d 265, 273 (S.D.N.Y. 2002) (finding that the ALJ was
not required to re-contact Plaintiff's treating physician to explain contradictions in his
report, because "the administrative record in this case adequately and completely
reflected [Plaintiff's] medical history").

    Parenthetically, the Court notes that the ALJ failed to state the weight granted to
Dr. Uwah's various reports. Generally, the Court would recommend remand on this
failure. See Rodriguez v. Astrue, 2009 WL 637154, at *27 (S.D.N.Y. Mar. 9, 2009)
(finding error where the ALJ simply stated he was not granting Plaintiff's treating
physicians controlling weight); see also 20 C.F.R. § 404.1527(d) ("Regardless of its
source, we will evaluate every medical opinion we receive."). However, for the reasons
stated above, it is clear from the ALJ's decision that he granted substantial weight to Dr.
Uwah's April 19, 2006 report while affording little weight to his later assessments. See
(R. at 17) (the ALJ noted that "[t]he primary basis for the determined RFC" was Dr.
Uwah's April 19, 2006 report); (R. at 15) (the ALJ found that "[t]he few rather minor
points raised [by Dr. Uwah's letter] d[id] not justify granting the later reports any further
evidentiary weight"). Furthermore, the ALJ, in accordance with the Regulations, relied
most heavily on Dr. Uwah's April 19, 2006 report, because it was consistent with the

SSA consultative sources and the record as a whole. 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Moreover, Plaintiff has not argued that the ALJ erred in this respect. Therefore, the Court declines to remand on this issue because the ALJ "traversed" the "substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); see also Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand.").

Based on the foregoing, the Court finds that the ALJ properly denied controlling weight to Dr. Uwah's various opinions because they were inconsistent with his initial opinion and with the record as a whole. Furthermore, the ALJ appropriately relied most heavily on Dr. Uwah's April 19, 2006 report, because it was consistent with the findings from the SSA consultative sources, Drs. Stang, Kamin, and Graff. Furthermore, the ALJ did not err in failing to re-contact Dr. Uwah for a second explanation of his inconsistent opinions. For the reasons stated above, the Court finds that the ALJ offered "good reasons" for denying controlling weight to Dr. Uwah's opinions and relying most heavily on his April 19, 2006 report. Snell, 177 F.3d at 133 (citations omitted).

### ii)  Dr. Stang's Opinions Support the Finding that Plaintiff can Perform the Basic Mental Demands of Unskilled Work

Plaintiff argues that the ALJ erred in failing to afford greater weight to the opinions from Dr. Stang, the SSA examining psychologist, than to the opinions from Drs. Kamin and Graff, the two SSA non-examining psychologists. Plaintiff's Brief, pp. 17-19. Essentially, Plaintiff argues that Dr. Stang's opinions were contrary to the ALJ's

finding that Plaintiff "had only 'mild mental limitations which would not preclude meeting the basic mental demands of competitive employment." Plaintiff's Brief, p. 18 (quoting (R. at 16)).

> Dr. Stang opined that Plaintiff
>
> c[ould] follow and understand simple work-related directions and instructions. She and her mother acknowledge[d] that she [wa]s a responsible worker. She c[ould] do simple work-related tasks such as baby-sitting and photocopying. She had volunteered to work at the Humane Society. Her stress tolerance [wa]s generally poor and she ha[d] a fear of getting fired. She ha[d] displayed some fearfulness of germs when she was baby-sitting but c[ould] handle this type of work. At times, she bec[ame] very fearful of leaving her house and she [wa]s fearful of crowds. This examiner noted performance anxiety when she was pressed during the Mental Status Examination. She could, probably, handle a simple job if there [wa]s limited public interaction and if the job tasks [we]re minimally stressful. However, she c[ould] have episodes of severe depression which might interfere with attendance on a long-term basis

(R. at 147).

In support of her argument, Plaintiff relies on the portions of Dr. Stang's report indicating that Plaintiff had a generally poor tolerance for stress, was fearful of crowds, and may experience "episodes of severe depression which might interfere with attendance on a long-term basis." Plaintiff's Brief, p. 18. Plaintiff contends that Dr. Stang's report effectively precluded Plaintiff from performing the basic mental demands of unskilled work. Plaintiff's Brief, pp. 18-19. Plaintiff appears to argue that if the ALJ had properly afforded greater weight to Dr. Stang's opinions, he could not also have found Plaintiff capable of performing the basic mental demands of unskilled work. Id. However, Plaintiff's argument must fail for two reasons.

First, despite Dr. Stang's statements concerning Plaintiff's depression and capacity to handle stress, his findings are consistent with the ability to perform the basic

mental demands of unskilled work. These mental demands "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling 85-15, 1985 WL 56857 at *4 (S.S.A.) (hereinafter SSR 85-15).

Here, Dr. Stang found that Plaintiff "c[ould] follow and understand simple work-related directions and instructions . . . . She c[ould] do simple work-related tasks such as baby-sitting and photocopying" (R. at 147). Dr. Stang further opined that Plaintiff "could, probably, handle a simple job if there [wa]s limited public interaction and if the job tasks [we]re minimally stressful." Id. Contrary to Plaintiff's argument, these findings are consistent with the ability to perform the basic mental demands of unskilled work.

Second, as previously stated, when forming the RFC, the ALJ properly relied most heavily on the April 19, 2006 report from Plaintiff's treating psychiatrist (R. at 17); Supra Part III.B.2.a.i. In that April 19, 2006 report, Dr. Uwah found that Plaintiff experienced no limitations in the categories of understanding and memory, sustained concentration and persistence, as well as adaption (R. at 190). These opinions are also consistent with basic mental demands of unskilled work. Thus, the ALJ's ultimate finding that Plaintiff could perform these mental demands is supported by substantial evidence.

Although both Dr. Uwah and Dr. Stang found that Plaintiff experienced some limitation in her ability to interact with others, unskilled "jobs ordinarily involve dealing primarily with objects, rather than with data or people." SSR 85-15, 1985 WL 56857 at *4. Furthermore, SSR 85-15 requires that Plaintiff "respond appropriately." Id. Thus, some limitation a claimant's ability to interact with people would not preclude unskilled

14

work. Here, both Drs. Kamin and Graff found that Plaintiff was not significantly limited in social interaction, with the exception that Plaintiff was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors (R. at 164, 182). Dr. Uwah opined that Plaintiff "c[ould] do work related mental activities if she [wa]s not under too much close scrutiny" (R. at 189). Indeed, according to Plaintiff's own statements, she was a "responsible worker" (R. at 147). Therefore, the ALJ's finding that Plaintiff retained the ability to "respond appropriately to supervision, co-workers and usual work situations" is supported despite some limitations in social interactions (R. at 16).

The Court notes that the ALJ did not specifically state the weight afforded to Dr. Stang's opinions. However, he engaged in a discussion of Dr. Stang's opinions (R. at 14), and found that they supported Dr. Uwah's April 19, 2006 report (R. at 18). Thus, any error by the ALJ in failing to state the weight afforded to these opinions is harmless. See Jones v. Barnhart, 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7, 2003) (internal citations omitted) (finding harmless error in the ALJ's failure to grant weight to Plaintiff's treating physicians because "he engaged in a detailed discussion of their findings, and his decision does not conflict with them"); Walzer v. Chater, 1995 WL 791963, at *9 ("[T]he ALJ's failure to [discuss a report completed by Plaintiff's treating physician] was harmless error, since his written consideration of [the] report would not have changed the outcome of the ALJ's decision."). Furthermore, Plaintiff has not argued that the ALJ's failure amounts to error and necessitates remand.

Therefore, Dr. Stang's opinions support the contention that Plaintiff is able to perform the basic mental demands of unskilled work.

15

### iii) The ALJ Did Not Improperly Rely on the SSA Non-Examining Review Psychologists

Plaintiff argues the ALJ improperly relied on the two SSA non-examining review psychologists because they were unable to review Dr. Uwah's various reports. Plaintiff's Brief, p. 13. Plaintiff further contends that "[a]t the very least, the ALJ had the burden to develop the record and request a second opinion from these sources based upon the [entire] record." Plaintiff's Brief, pp. 13-14.

As previously stated, the ALJ based the RFC largely on Dr. Uwah's April 19, 2006 report. Supra Part III.b.2.a.i; (R. at 17). The ALJ then went on to find that Dr. Uwah's April 19, 2006 report was supported by the opinions from Dr. Stang, the SSA examining psychologist, as well as the opinions from Drs. Kamin and Graff, the two SSA non-examining review psychologists (R. at 18). After a thorough reading of the ALJ's decision, the Court finds that the ALJ did not improperly rely on the opinions from Dr. Kamin and Dr. Graff. Indeed the opinions from all three SSA psychologists, as well Dr. Uwah's April 19, 2006 report, support the ALJ's finding that Plaintiff could perform "the basic mental demands of competitive employment" (R. at 16); Supra Part III.b.2.a.i, ii. Thus, the Court can find no error in the ALJ's reliance, at least in part, on the opinions from Drs. Kamin and Graff despite their inability to review Dr. Uwah's opinions.

The Court also finds Plaintiff's second argument unavailing. The ALJ will obtain additional evidence if he is unable to make a determination of disability based on the current record. 20 C.F.R. § 404.1527(c)(3). However, here, the ALJ was able to find Plaintiff not disabled based on the evidence from Plaintiff's treating psychiatrist, the SSA consultative examining psychologist, and the two SSA non-examining review

psychologists. Thus, the Court can find no error in the ALJ's failure to obtain a third non-examining review opinion.

Therefore, the Court finds that the ALJ properly relied, in part, on the opinions from the SSA non-examining review psychologists in determining Plaintiff's disability status. Furthermore, the Court finds that the ALJ did not err in failing to further develop the record.

### b) The ALJ Did Not Erroneously Fail to Include Any Additional Mental Limitations from Dr. Uwah in the RFC

While unclear, Plaintiff appears to argue that because the ALJ erred in evaluating the opinions from Dr. Uwah, the RFC failed to contain all Plaintiff's non-exertional mental limitations. Plaintiff's Brief, pp. 19-20.

The Court has previously addressed Plaintiff's arguments with respect to Dr. Uwah and has found no error worthy of remand. Supra Part III.B.2.a.i. Furthermore, the ALJ based the RFC largely on Dr. Uwah's April 19, 2006 report and the limitations in that assessment were appropriately included in the RFC (R. at 17).

Therefore, the Court finds that the ALJ appropriately included Dr. Uwah's mental limitations in the RFC.

### c) The ALJ's Credibility Analysis is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in evaluating her credibility. Plaintiff's Brief, pp. 14, 16-17.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to

accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[12] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Here, the ALJ completed the two-step credibility analysis by finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce only

---

[12] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

some of the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely credible" (R. at 18). Throughout the ALJ's decision, he also discussed several of the relevant factors. For example, the ALJ considered Plaintiff's testimony that she had "successfully completed [her] first year of college, and ha[d] been accepted, and w[ould] be attending Utica College to continue on for her bachelor's degree." Id. The ALJ also noted Dr. Uwah's opinions that Plaintiff's "PTSD and obsessive qualities seemed to be responding fairly well to Prozac[13] and Cymbalta[14]" (R. at 15). Finally, the ALJ considered Plaintiff's statements that she was "a responsible worker," volunteered at the Humane Society, and also babysat (R. at 14, 18).

Therefore, the ALJ's finding that Plaintiff's statements of her symptoms, "[we]re not entirely credible," is supported by substantial evidence.

## IV.  Conclusion

After carefully examining the administrative record, the Court finds that substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, properly considered all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error. Because the Court further finds that substantial evidence

---

[13] Trademark for fluoxetine hydrochloride, treats "depression, obsessive-compulsive disorder, bulimia nervosa, and premenstrual dysphoric disorder." Dorland's Illustrated Medical Dictionary, 1562, 730 (31st ed. 2007).
[14] Trademark for duloxetine hydrochloride, used to treat "major depressive disorder." Dorland's at 465, 580.

supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for

Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the

Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED:        June 21, 2010

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within fourteen (14) days of receipt of this Report and

Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of

the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v.*

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v.*

*Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for

the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


Syracuse, New York
DATED:        June 21, 2010